UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,          :

    -against-                                         :        16 Cr. 692 (JMF)

AGRIS PETROVS,                                   :

                  Defendant.              :
------------------------------------------------------x


**SENTENCING MEMORANDUM ON BEHALF**
**OF DEFENDANT AGRIS PETROVS**


Dated: New York, New York
        August 13, 2019


                                               Respectfully submitted,

                                               **RICHARD B. LIND, ESQ.**
                                               575 Lexington Avenue
                                               New York, NY  10022

                                               *Attorney for Defendant*
                                               *Agris Petrovs*

# RICHARD B. LIND
ATTORNEY AT LAW
575 LEXINGTON AVENUE
4TH FLOOR
NEW YORK, N.Y. 10022

TELEPHONE (212) 888-7725
E-MAIL: rlind@lindlawyer.com
WEBSITE: www.richardlindlawyer.com

August 13, 2019

**By ECF & Fedex**

Hon. Jesse M. Furman
United States District Judge
U.S. Courthouse
40 Foley Square
New York, NY 10097

      Re:    United States v. Agris Petrovs
                 16 Cr. 692 (JMF)

Dear Judge Furman:

      This letter is submitted on behalf of defendant Agris Petrovs ("Agris" or "Defendant"), who is scheduled to be sentenced by this Court on August 27, 2019. For the reasons stated herein, a sentence of 12 months and one day's imprisonment is sufficient but not greater than necessary punishment in this case.

## BACKGROUND

      As the presentence report ("PSR") states, Agris was named in a one-count felony superseding information S20 16 Cr 692 (JMF) on March 5, 2019. It charges that from at least October 2018 through December 2018, Agris and others conspired to commit wire fraud, in violation of 18 U.S.C. § 1343, and to defraud a financial institution, in violation of 18 U.S.C. § 1344. Agris was also cited in a forfeiture allegation. PSR, ¶¶ 1-3.

      Agris pled guilty as charged before this Court, pursuant to a plea agreement with the government. Under the plea agreement, the government estimated that the Offense Level for Defendant's conduct was 14, and that his Criminal History Category was I, yielding a Guidelines sentencing range of 15 to 21 months' imprisonment. *See* PSR ¶ 4.

## STATEMENT OF THE FACTS

### A. Defendant's Offense Conduct

As recounted in the PSR, from February 2018 through December 2018, a network of individuals in the United States and Eastern Europe facilitated a wire and bank fraud conspiracy, which laundered funds derived from the conspiracy in the United States to Europe; Agris's involvement occurred between October 2018 and his arrest in early December 2018. The members of the conspiracy principally targeted victims through fraudulent sale items on web-based sites, including but not limited to, eBay, an e-commerce website, and Craigslist. PSR ¶ 9. "The *modus operandi* consisted of advertisements posted on eBay or Craiglist for the sale of large-ticket items." *Id.*

After establishing contact with a victim, a co-conspirator would negotiate the price of the item in question, which did not exist. Victims would wire the payment to a bank account established in the United States. Multiple bank accounts were established in the United States by members of the conspiracy, including Agris. After a victim's payment was received, a member of the conspiracy would withdraw funds in amounts less than $10,000 to minimize detection. PSR ¶ 11.

In particular, Agris opened business bank accounts in the name of Petrovs Corporation in three different banks. Defendant's date of birth and his passport numbers were listed for these bank accounts. PSR ¶ 23. In addition, "Victim-9" at the direction of the purported seller, wire transferred $55,000 to the "Petrovs Corporation" account at one bank for the purchase of a Mercedes-Benz car. Victim-9 never received this purchased item or a refund of the money Victim-9 had wired. *Id.* ¶ 31. A similar amount was withdrawn by Agris. ¶ 38.

On December 2, 2018, Agris, and three other defendants, were arrested at JFK International Airport. PSR ¶ 33. After being read his *Miranda* rights, Agris informed a law enforcement agent that he was recruited in Latvia to travel to the United States for the purpose of opening bank accounts and withdrawing money from those accounts. He also disclosed that he was supervised by the "Handler" and that Agris withdrew $55,000 from the accounts he opened and received $4,000 for his involvement. PSR ¶ 37.

### B. Agris's Personal History

The PSR states that Defendant was born on February 4, 1993, in Cesis, Latvia. He is the older of the two children born to the consensual union of Valdis Petrovs and Vineta Purina. Valdis is a construction worker; and his mother works as a florist. Agris's sister is training to be a police officer. Defendant has one paternal half-sibling, who resides with his father; and one maternal half-sibling who resides with his mother. PSR ¶¶ 71-73.

According to Defendant, he was raised by his parents in Cesis until age 10 or 12, when his parents separated. The defendant and his sister continued to be reared by their

mother. Agris and his sister experienced no financial difficulties during his childhood and cited no particular problems with them. PSR ¶ 74.

### C. Physical Condition; Mental and Mental/Emotional Health

Agris reported he is in good physical condition. In addition, Defendant stated that he has no history of any emotional or mental health problems. PSR ¶¶ 78-80.

### D. Substance Abuse

Agris disclaimed the use of any illicit drugs, and denied any substance-abuse problems and/or treatment. PSR ¶ 81.

### E. Educational Skills; Employment Record

Defendant advised that in 2014 he graduated from a vocational high school in Valmiera, Latvia. Defendant maintains he has basic construction skills. PSR ¶¶ 82-83. Defendant cited a history of employment in a deliver company and a variety of construction companies. PSR ¶¶ 84-91.

## DISCUSSION

## POINT ONE

## MIGUEL SHOULD BE SENTENCED TO A TERM OF SIXTY MONTHS' IMPRISONMENT

### A. *Booker* And Its Progeny

The Supreme Court held, in *United States v. Booker,* 543 U.S. 220 (2005), that the mandatory nature of the United States Sentencing Guidelines violated the Sixth Amendment. In its remedy opinion, the Court severed 18 U.S.C. § 3553(b)(1), which had rendered the Guidelines binding on federal sentences. This left 18 U.S.C. § 3553(a) in effect. In a series of subsequent decisions, the Supreme Court and the Second Circuit have confirmed that under the advisory Guidelines regime, "a sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera,* 550 F.3d 180, 188 (2d Cir. 2008).

The Court twice emphasized that a sentencing judge assumes "an overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* at 491. *See also United States v. Dorvee,* 604 F.3d 84, 93 (2d Cir. 2010) ("[u]nder §3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. §3553(a)(2)")(quoting *United States v. Samas,* 561 F.3d 108, 110 (2d Cir. 2009)).

Certain key principles have emerged from these decisions: robotic adherence to the Guidelines has been replaced by individualized assessment, guided by the factors set out in Section 3553(a). The touchstone is reasonableness, informed by the statutory command that a sentence should not be greater than necessary to achieve its purpose.

### B. Factors Warranting Downward Variance

Agris should be sentenced to a sentence of one year and a day term of imprisonment, for several reasons. *First*, Agris is truly remorseful about his conduct. This is reflected in his good conduct while housed at the MDC.

*Second*, under Section § 3553(a)(6), the Court must consider :the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." While the Circuit has interpreted this requirement as a means to eliminate sentencing disparities nationwide, *see United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007), District Courts in this Circuit have applied these principles for similarly situated codefendants. *See e.g. Simon v. United States*, 361 F. Supp.2d 35, 49 (E.D.N.Y. 2005).

Two similarly situated codefendants in this case, compel, we submit, a reduction in Agris's sentence. Defendant Toms Saulgriezis faced a Guidelines range of 21 to 27 months' imprisonment, based on an offense level of 16 and a criminal history category of I. Mr. Saulgriezis was sentenced to 14 months' imprisonment, *see* Doc. No. 263, which constituted a 33-50% reduction from his Guidelines range. Similarly, Defendant Ivars Ozols's Guidelines range was 51 to 63 months' imprisonment but he received a sentence of 39 months' imprisonment – a 25-33% reduction.

Here, a reduction from the Guidelines range of 15-21 months to a 12-month-and-one-day sentence would be a 20-40% reduction. Such a reduction is certainly warranted in light of Agris's relatively minor role in the conspiracy, his lack of enrichment because of his criminal conduct; and the lack of any prior criminal conduct.

*Third*, Defendant has strong support from his family. Annexed hereto as Exhibit A is a letter on his behalf by his sister.

*Finally*, Agris lack of a positive paternal influence throughout his life also warrants a 60-month sentence. While Agris had a supportive mother and sister, his father was totally absent in his upbringing. *See* PSR ¶ 74. As Judge Weinstein has consistently ruled, "lack of male parental guidance is a known, significant contributor to crime." *United States v. Bannister*, 786 F. Supp.2d 617, 642 (E.D.N.Y. 2011). *See also, United States v. Armstrong*, 07 CR 874 (JBW), 2008 WL 5459177, at *2 (E.D.N.Y. Dec. 22, 2008) (sentencing defendant to half the Guidelines range, where court observed that "[t]he offense is serious. The defendant was a member of a gang that disturbed the peace and threatened the safety of a public housing project. [But] Armstrong's childhood was affected by inadequate parental control."); *see also United States v. Petit*, 09 CR 455

(JBW), 2010 WL 1727822, at *2 (E.D.N.Y. Apr. 9, 2010)(imposing probation instead of Guidelines range of 27-33 months, where court found that "the offense is a serious one, the defendant is a peaceable, well-motivated young man, who has tried to make the best of a bad childhood. Defendant had abusive parents, and was raised in various foster homes from the age of six.").

## CONCLUSION

In sum, for the foregoing reasons, we submit that this Court should impose a sentence no greater than 12 months and one day imprisonment.

Respectfully submitted,

/s/ Richard B. Lind
_____
Richard B. Lind

Attachment
cc:  AUSA Matthew J.C. Hellman (by ECF)(w/ attachment)
     U.S. Probation Officer Johnny Kim (by email)(w/ attachment)

**EXHIBIT A**

I'm Agris Petrovs sister, Dita. Agris, as the older brother helped our mother in childhood, and took responsibility for me, as a little sister, while our mother was at work, because my dad left the family when we were very small. Agris dressed me, took walks, cooked to eat, waited at a stop when I went home from kindergarten, and took on such casual care that mattered. When I remember my childhood, I think I have the best brother. Agris is very responsible because he was entrusted with the tasks he performed with the greatest sense of responsibility. For example, the house was heated, sifted and clattered in the shed, planted tomatoes in greenhouses, mowing grass, maintaining our fruit trees and bushes, digging a sewer trench at 1 metre, because otherwise we couldn't do it then, an emphasis on how much work was done. Agris is public and friendly, a man with a good aura. Someone to talk to. Agris primary education, (9 classes) was acquired at Ligatne elementary school. Here he was active at school, participating in school and extracurricular activities, organising them. Sports were very fond of it, too, and they were happy to do it. Especially cycling, florball. I found a continuing appreciation for serious and diligent work and a successful presentation of the class project, which was handed to him at school. Agris then went to the vocational school, where he learned vocational secondary education – hotel services, hospitality services specialist. He also went well at this school, learned what he liked, participated in contests for waiters and chefs, where he had obtained approvals. He can cook very well. Agris officially worked in construction, in Latvia, Sweden, Norway, what exactly his duties were, he would certainly tell himself. Unfortunately, I do not have access to employment contracts to send to you. Agris materials helped our mom. Since he went to the vocational school, he has maintained himself. He had also given himself a motorcycle because he was caught up with adrenaline and speed. We also have little brother REDACTED, who our mom has from other relationship. The little brother is a disabled, a child with mental backwardness and behavioral disabilities. Agris has taken care of him from a little birth, having taken his first steps, spent a lot of time with him, teaching basketball, florball and riding a wheel, and pleasing his daily life. REDACTED is always happy when Agris comes to visit, because he knows he can do a lot of sports and cooking. It is positive that Agris can work together and find common language with a child, too, with special needs. We've grown up now, but we in the family support each other and visit each other as often as possible. When Agris is home, my child will have a christening and Agris will be his godfather. Agris is very helpful, careful, with a high sense of responsibility. Agris is independent, very fond of travelling. Mom, Daddy, brother, sister love you and we're very looking forward to home!